UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Richard Maximus Strahan

    v.                                                   Civil No. 22-cv-391-LM
                                                        Opinion No. 2022 DNH 144 P

William McNamara, Tracy Birmingham,
Steven Lee, William Breault, and Rene Kelly

**O R D E R**

Plaintiff Richard Maximus Strahan has sued two New Hampshire local police officers and three officials of the University of New Hampshire ("UNH"), alleging that they acted individually and in concert to illegally bar him from using UNH transportation services and to defame him. Presently before the court is plaintiff's emergency motion for temporary restraining order and preliminary injunction enjoining the defendants from arresting him for violating the transportation services ban or from "otherwise interfering with [his] peaceful riding any bus operated by [UNH] during its regular period of public transit operations . . . .". (Doc. No. 20). The defendants have timely objected (doc. nos. 26 and 28), and Mr. Strahan has timely replied to those objections. (doc. no. 30).[1]

---

[1] Mr. Strahan also moved for a hearing on his motion for injunctive relief (doc. no. 22), to which the defendants timely objected (doc. nos. 27 and 29). The motion for a hearing is denied, as the essential facts are not in dispute. See Campbell Soup Co., v. Giles, 47 F.3d 467, 470 (1st Cir. 1995) (observing that an evidentiary hearing is not an indispensable requirement when a court allows or refuses injunctive relief under Fed. R. Civ. P. 65.); Syntex Ophthalmics, Inc. v. Tsuetaki, 701 F.2d 677 682 (1st Cir. 1983) (evidentiary hearing not mandated where "evidence already in the district court's possession" enabled it to reach reasoned conclusions).

## **Legal Standard**

To obtain a restraining order or preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits of his claim, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Bruns v. Mayhew, 750 F.3d 61, 65 (1st Cir. 2014) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).  "To demonstrate likelihood of success on the merits, [the party] must show more than mere possibility of success — rather, [he] must establish a strong likelihood that [he] will ultimately prevail." Sindicato Puertorriqueño de Trabajadores v. Fortuño, 699 F.3d 1, 10 (1st Cir. 2012).

"[T]he first two factors, likelihood of success and irreparable harm, [are] 'the most important' in the calculus," id. (quoting González–Droz v. González–Colón, 573 F.3d 75, 79 (1st Cir. 2009)), and "the second factor, irreparable harm, is an 'essential prerequisite for equitable relief,'" Potts NH RE, LLC v. Northgate Classics, LLC, No. 12–cv–82–SM, 2012 WL 1964554, at *3 (D.N.H. May 10, 2012) (quoting Braintree Labs., Inc. v. Citigroup Global Mkts. Inc., 622 F.3d 36, 41 (1st Cir. 2010)), R. & R. adopted by 2012 WL 1969051 (May 30, 2012).  Any "preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right . . . ." Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8–9 (1st Cir. 2012) (citation omitted).

## Background

The following facts are drawn from Mr. Strahan's complaint, documents appended to the complaint, the instant motion, Mr. Strahan's affidavit (doc. no. 23), and the declaration of defendant Tracy Birmingham, general counsel for the University System of New Hampshire ("Birmingham Dec.") (doc. no. 28-1).

On June 10, 2022, UNH notified Mr. Strahan in writing that he would be arrested if he entered any bus operated by UNH. Complaint (doc. no. 1) ¶¶ 3-4. Mr. Strahan was served in hand with the notice soon after. Id. ¶ 20; Strahan Aff. (doc. no. 23) ¶ 12. The notice was issued by UNH Director of Hospitality & Campus Services William McNamara, one of the defendants in this case. See Attachment 1 to Pl. Mot. (doc. no. 20).

The notice states that Mr. Strahan is banned from UNH buses because of

> repeated instances of refusal to abide by UNH transportation rules, disregard of directions from transportation service employees, verbal abuse and intimidation of University staff members and …[bus] patrons, and refusal to comport yourself in a manner consistent with behavioral expectations.

Id. Mr. Strahan describes the circumstances leading up to the ban as follows:

> On 10 June 2022 I was commuting from UNH to Dover on the Wildcat Transit Route 3B bus. The commute was uneventful until the bus stopped at my chosen bus stop. I went to the front door to exit as is my usual practice. But a new driver I never saw before told me that she would not open the doors so I could exit. She gave me no reason why I could not exit the bus. Instead of driving onward to the next bus stop, she insisted in engaging in a protracted conversation with me. I did not want to talk to her but just go back to the office. The other passengers felt the same. They shouted out to her to drive the bus to their stops and to let me out of the bus. Instead she became concerned that I might file a complaint against her as she knew who I was and was biased against me from the start in her conduct. She called the

> Dover Police to file a false report against me of disrupting the bus and soliciting them to arrest me for trespassing on the bus. I felt sorrier for my fellow passengers than for me. Clearly the driver was an [expletive deleted] and just wanted to cause a ruckus.

Pltff. Aff. (doc. no. 23) ¶ 8.[2]

Defendant Tracy Birmingham, general counsel for the University System of New Hampshire, provided background regarding Mr. Strahan's interaction with the UNH bus service. See Birmingham Dec. (doc. no. 28-1). After first noting that defendant McNamara has the "authority to enforce rules relating to the use of UNH's transportation services, including banning passengers . . ." id. ¶ 2, Birmingham detailed the following:

> On or about March 20, 2019, UNH Transportation sent Strahan a Final Warning, cautioning that Strahan would not be permitted to ride the UNH Wildcat Transit buses if he continued to disregard drivers' instructions that he stop moving to the front door before the bus stopped and crossing directly in front of the bus after disembarking.
>
> On or about October 12, 2021, I emailed Mr. Strahan to remind him of expectations for civil engagement and to advise that use of an expired University student ID to avoid paying transportation fares was fraudulent and needed to stop.

Birmingham Dec. (doc. no. 28-1) ¶¶ 4-5.

Birmingham also detailed Mr. Strahan's past behavior on UNH buses:

> On or around October 19, 2021, a driver reported that Mr. Strahan showed an invalid student UNH ID and tried to board the bus without paying the fare.
>
> On or around October 26, 2021, a driver reported that Mr. Strahan did not show a valid bus pass or pay the fare. When the driver asked if he

---

[2] Mr. Strahan does not explain how the driver was a new one "he had never seen before" yet also "knew who [he] was and was biased against him."

had a UNH ID or the fare, he did not respond and the driver had to continue on the route to avoid delays. When the driver insisted that he display an ID or pay the fare, Mr. Strahan claimed that no one else showed any pass to ride, and then reluctantly paid the fare while shouting at the driver that transportation personnel "were all Nazis, he would sue [them] all, [they] would rot in jail for the rest of [their] lives, and [they] would all burn in hell with [their] corporate overlords."

On or around November 19, 2021, a driver reported that Mr. Strahan tried to use an invalid student UNH ID and the driver said he had to pay cash fare because his ID was invalid. He asked the driver who said his ID was invalid, and then held up service to probe further for the name of the manager who provided direction that his expired UNH ID was not to be accepted. When he was advised of the individual's name, Mr. Strahan said "so she's the manager for now, but everything is temporary. Don't be too loyal or get too attached to her because I am the master of this situation."

On or around November 23, 2021, a driver reported that Mr. Strahan attempted to use his invalid UNH ID to ride, and was informed by the driver that his UNH ID was not valid. He proceeded to pay the fare while grumbling about how UNH IDs "don't go invalid." After he finished paying, he brought up that the driver had filed a report about him and stated that next week another UNH employee would be a defendant in federal court regarding a government corruption lawsuit. After that, he proceeded to wear his mask improperly, and ignored the driver's repeated announcements about mask use, forcing the driver to stop the bus and confront him with a final warning.

On or around December 21, 2021, a driver reported that Mr. Strahan attempted to use his invalid UNH ID. When the driver informed him that his ID was invalid, he said, "I gave you a chance, but if you stay on this path you will end up in hell."

On or around January 6, 2022, a driver reported that Mr. Strahan tried to use his invalid UNH ID. When the driver advised that he had to pay, he said he only had a dollar. When the driver said he still had to pay, Mr. Strahan made a scene and called the driver "a Nazi." The driver had to ask him to wear his mask properly three times. When Mr. Strahan got off the bus, he stated that a transportation manager "was a liar" and he was going to sue her.

On or around March 24, 2022, a driver reported that Mr. Strahan stood in the street at the bus stop. The driver reports that it is Mr. Strahan's practice to sometimes stand in the street to force the bus to wait short of the normal bus stop. The driver gestured and beeped the horn to notify Mr. Strahan to move, and then proceeded to the stop to allow other passengers to board. Mr. Strahan screamed at the driver, accused them of trying to run him over, and put his phone in the driver's face and said he was recording. Mr. Strahan entered the bus without a mask (as the driver reported was his regular practice) and only put it on after he had been seated in the back of the bus. The driver did not direct Mr. Strahan to put on the mask upon entering the bus in order to avoid a further confrontation. When he disembarked, Mr. Strahan stepped into the street in front of the bus and walked down the street obstructing the vehicle. The driver reports that Mr. Strahan had similarly obstructed the vehicle after disembarking on the previous day. On that day Mr. Strahan also walked to the front of the bus before it stopped, and called the driver "stupid" when he was directed to exit through the rear door.

On or around March 29, 2022, a driver reported that Mr. Strahan stood in the street to block the bus from its normal stop and refused to move when the driver directed him to get out of the street. Because Mr. Strahan regularly enters the bus without a mask, the driver stood up and directed him to put on a mask before entering. Mr. Strahan began screaming at the driver and called him an "a-hole."

On or around June 8, 2022, a driver reported that Mr. Strahan walked to the front of the bus as it rolled to a stop. When the driver informed him that riders had to exit from the doors at the back of the bus, Mr. Strahan immediately started shouting and demanding the driver open the front door, to which the driver said no because policy is that all passengers get off through the back door. Mr. Strahan continued to insist and the driver continued to deny his demand to open the front door. Mr. Strahan then pulled out his phone, began recording the driver, demanded their name and the names of their supervisors, threatened to sue the driver, and accused the driver of kidnapping him. The driver radioed UNH transportation dispatch and requested that police be called to deal with the incident. Other passengers told Mr. Strahan to stop his behavior and get off at the back door; Mr. Strahan then engaged in a heated argument with some passengers that lasted for approximately 10-15 minutes.

On June 9, 2022, when the driver requested that Mr. Strahan exit the bus through the rear door in accordance with posted rules, he

> demanded her name, took his phone out and indicated he was recording her, and said he would see her in court and that he "loves to sue assholes like you."

Birmingham Dec. (doc. no. 28-1) ¶¶ 6.

The transportation ban notice concludes by indicating that Mr. Strahan could appeal the notice to UNH Police Chief and Associate Vice President for Public Safety and Risk Management Paul Dean. Notice, Attachment 1 to Strahan Aff. (doc. no. 23). Chief Dean denied the appeal on July 11, 2022.

## Discussion

A. Likelihood of Success on the Merits

The gist of Mr. Strahan's claim is that neither defendant McNamara nor UNH had the authority to ban Mr. Strahan from UNH transportations services. Specifically as to defendant McNamara, Mr. Strahan argues in his reply memo that McNamara had no authority to ban any member of the public from riding on any UNH bus. Pltf. Repl. (doc. no. 30) ¶¶ 1, 6. Mr. Strahan offers no support for his assertion. As previously noted however, the Birmingham declaration unequivocally indicates that Mr. McNamara <u>does</u> possess such authority. Birmingham Dec. (doc. no 28-1) ¶ 2.

More generally, Mr. Strahan alleges that UNH's ban is illegal because New Hampshire's criminal trespass statute only applies to real property, not a movable object like a bus. Pltf. Mot. (doc. no. 20) at 2. The court's analysis of the pertinent statute suggests otherwise. New Hampshire law provides that a "person is guilty of criminal trespass if, knowing that he is not licensed or privileged to do so, he enters

7

or remains in any place." N.H. Rev. Stat. Ann. § 635:2, I.  In addition, "[c]riminal trespass is a misdemeanor if: . . . (b) [t]he person knowingly enters or remains: . . . (2) [i]n any place in defiance of an order to leave or not to enter which was personally communicated to him by the owner or other authorized person." N.H. Rev. Stat. Ann. § 635:2, III(b)(2).

As the undisputed record shows that Mr. McNamara is an "authorized person," the only element of the New Hampshire statute at issue is whether a UNH bus is a "place."  The court agrees with the parties' assessment that the New Hampshire courts have not specifically answered this question.  In his reply, Mr. Strahan asks this court to certify the question to the New Hampshire Supreme Court.  But as the First Circuit Court of Appeals has observed, "[h]aving chosen the federal forum for his state-law claims, the plaintiff must live with our obligation to apply New Hampshire law as it currently stands." Reenstierna v. Currier, 873 F.3d 359, 368 (1st Cir. 2017); see also Phoung Luc v. Wyndham Mgmt. Corp., 496 F.3d 85, 95 (1st Cir. 2007) (observing that a plaintiff who chose a federal forum is "in a particularly poor position to seek certification.").  The court, therefore, declines to certify the question of whether a bus is a "place" within the meaning of New Hampshire's trespass statute, and instead turns to traditional methods of statutory construction.[3]

---

[3]To interpret a New Hampshire state statute, we enjoy New Hampshire interpretive methods and canons of construction. See Garran v. SMS Fin. V, LLC (In re Garran), 338 F.3d 1, 6 (1st Cir. 2003) (stating that when a state court has not interpreted a state statute, the federal court "must predict how the [highest state court] would interpret the statute").

New Hampshire statutes are interpreted based on their plain language. New Hampshire courts "first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." In re Carrier, 165 N.H. 719, 82 A.3d 917, 920 (2013). "[I]f the language is clear and unambiguous," the court need "not look beyond the language of the statute." In re Town of Seabrook, 163 N.H. 635, 44 A.3d 518, 525 (2012). The court must "interpret legislative intent from the statute as written and [ ] not consider what the legislature might have said or add language that the legislature did not see fit to include." Carrier, 82 A.3d at 920.

Here, the trespass statute contains no language limiting the definition of the term "any place" to "real property," as Mr. Strahan argues. If the New Hampshire legislature had intended to restrict the scope of the word "place," it could have done so. While not directly on point, the New Hampshire Supreme Court's decision in State v. Brown, 927 A.2d 493, 494 (N.H. 2007) is illustrative of the proposition that this court may <u>not</u> limit the breadth of a statute where the language of the statute has not done so. In Brown, the defendant was charged with the <u>state</u> crime of providing false information related to the purchase of a firearm, based on information he omitted from a <u>federal</u> firearms form. Id. at 494. The trial court dismissed the case, finding it had no jurisdiction because the offense related to the federal form. Id. The Court reversed, holding that the statute[4] "does not limit the

---

[4] N.H. Rev. Stat. Ann. § 159:11 states that "[a]ny person who, in purchasing or otherwise securing delivery of a pistol, revolver, or other firearm, gives false information ... shall be guilty of a misdemeanor for the first offense, and be guilty of a class B felony for any subsequent offense."

9

type of false information that it criminalizes when conveyed in the acquisition of a firearm." Id; see also, Antosz v. Allain, 40 A.3d 679, 682 (N.H. 2012) (declining to apply "Firemen's Rule," barring a firefighter's ability to sue for negligence, to a suit that fell outside statute's specific prohibitions).

As a federal court sitting in diversity, this court must provide its "best guess" as to open questions of state law. See Noonan v. Staples, Inc., 556 F.3d 20, 30 (1st Cir. 2009) (citing Liberty Mutual Ins. Co. v. Metro. Life Ins. Co., 260 F.3d 54, 65 (1st Cir. 2001)). At the same time, the court is mindful that it "must tread lightly in offering interpretations of state law where controlling precedent is scarce." Id. (citing Gill v. Gulfstream Park Racing Ass'n, Inc., 399 F.3d 391, 402 (1st Cir. 2005)). Balancing these considerations, and in accordance with New Hampshire principles of statutory construction, the court declines to engraft a limitation onto the words "premises" or "any place" in New Hampshire's criminal trespass statute where the New Hampshire legislature has not done so.[5] As such, the court necessarily finds

---

[5] As the parties acknowledge, there is scant relevant case law outside New Hampshire to guide the court. At the federal level, a district court in this circuit has held that a bus passenger's refusal to follow a police officer's direction to leave the bus provided probable cause for an arrest under Maine's "remain in any place" criminal trespass statute. See Thompson v. City of Portland, 620 F. Supp. 482, 486 (D. Maine 1985). At the state level, an intermediate Ohio appeals court has held, with respect to an analogous statute, that "[f]or purposes of the statute, a 'premises' is any 'place,' including a vehicle." State v. Jones, 195 N.E. 3d 561, 568 (Ohio Ct. App. 2022) (citing State v. Gilbert, 154 N.E.3d 288, 291-2 (Ohio Ct. App. 2020)). A Texas appeals court, however, surveying Texas cases involving that state's criminal trespass statute, has come to the opposite conclusion. See Sarsfield v. State, 11 S.W.3d 326, 328 (Tex. App. 1999) ("We construe these cases as established authority for the proposition that criminal trespass applies only to real property intrusions . . . ."). A Georgia case implies, but does not hold, that entry onto a bus after receiving notice from the driver that entry is forbidden could constitute criminal

that Mr. Strahan has failed to meet his burden of demonstrating a likelihood of success on the merits.

B. Irreparable Harm

Mr. Strahan fares no better with the second element of a successful request for injunctive relief. He has not demonstrated that his ban from the UNH bus system will cause him irreparable harm. He asserts that he has "no ready access" to any pharmacy, supermarket or the UNH campus. Pltf. Aff. (doc. no. 23) ¶ 14. But as defendants McNamara, Birmingham and Lee point out, there is public bus service available to Mr. Strahan that would accommodate his need for transportation to his pharmacy and a supermarket. Def. Mem. (doc. no. 28) at 8. Moreover, Mr. Strahan is not banned from the UNH campus, only its transportation services. Relatedly, although he implicitly acknowledges that he is neither a current UNH student or employee, see Pl. Aff. (doc. no. 23) ¶ 1, Mr. Strahan offers no details as to the "research" that allegedly requires his presence on the UNH campus. Finally, to the extent that his one-year ban from UNH transportation causes him financial harm, Mr. Strahan has an adequate remedy at law, which further counsels against injunctive relief. Cf. Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219, 222 (1st Cir. 2003) ("Where a plaintiff stands to suffer a substantial injury that cannot adequately be compensated by an end-of-case award of money damages, irreparable harm exists.").

---

trespass under that state's law. See State v. Seignious, 399 S.E. 2d 559, 560 (Ga. Ct. App. 1990).

C. Balance of Equities

This factor requires the court to weigh the "hardship to the movant if the injunction does not issue as contrasted with the hardship to the nonmovant if it does." Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006). Based on the record before the court, the hardship to Mr. Strahan is limited, given the other transportation options and monetary damage claims available to him. By contrast, the court is persuaded that the hardship to UNH is more significant, given the detailed recounting of Mr. Strahan's disruptive behavior on the UNH bus, see Birmingham Dec. (doc. no. 28-1) ¶ 6, and his refusal to heed prior warnings. It cannot seriously be disputed that UNH has an interest in operating its buses without unnecessary interruption and protecting its drivers and other passengers from other passengers' inappropriate conduct. The balance of equities therefore weighs in favor of denying plaintiff's requested injunctive relief.

D. Public Interest

Neither side focuses heavily on the final factor — whether and to what extent the public interest is impacted by the grant or denial of injunctive relief. In the court's view, the same factors that balanced the equities in the defendants' favor also persuade the court that denying the requested injunctive relief would not be injurious to the public interest, given the documented history of Mr. Strahan's behavior.[6]

---

[6] The court notes that Mr. Strahan has not meaningfully contested the factual descriptions of his behavior in the Birmingham declaration. Instead, as described herein, he focusses almost entirely on the defendants' authority to temporarily bar him from UNH transportation services.

## Conclusion

Based on the foregoing, plaintiff's motion for temporary restraining order and preliminary injunction (doc. no. 20) and his motion for hearing (doc. no. 22) are denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

November 17, 2022

cc: Richard Maximus Strahan, pro se
     Counsel of Record